UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:22-cr-00455-RWS |
| TYRON EDWARDS, | ) ) ) |
| Defendant. | ) |

### GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

**1. PARTIES**

The parties are the defendant Tyron Edwards, represented by defense counsel Melissa K. Goymerac, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Count I and Count III of the Indictment, the Government agrees to dismiss Count II at the time of sentencing. The Government also agrees that no further federal prosecution will be brought in this District relative to the Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Indictment.

1

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties agree to jointly recommend a sentence of 36 months, to be followed by three years of supervision. The parties understand that the Court is neither a party to nor bound by the Guidelines recommendation agreed to in this document.

**3.     ELEMENTS**

    **A.**     **Count I:** As to Count I, the Defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

    **(i)**     The Defendant was in possession of a mixture or substance containing fentanyl, a Schedule II controlled substance drug;

    **(ii)**     The Defendant knew that he was in possession of a mixture or substance containing fentanyl; and,

    **(iii)**     The Defendant intended to distribute some or all of the mixture or substance containing fentanyl to another person.

    **C.**     **Count III:** As to Count III, the Defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

    **(i)**     The Defendant was in possession of a mixture or substance containing fentanyl, a Schedule II controlled substance drug;

    **(ii)**     The Defendant knew that he was in possession of a mixture or substance containing fentanyl; and,

**(iii)** The Defendant distributed some or all of the mixture or substance containing fentanyl to another person.

4. **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

The St. Louis County Anti-Gang Unit (AGU) and the Violent Gang Safe Streets Task Force (VGSSTF) arrested the Defendant on Tuesday, March 8, 2022. After seeing the Defendant's car speeding and swerving through traffic on northbound MO-367 near Chambers Road, the detectives realized it matched a car that had recently fled an attempted traffic stop in Bellefontaine. AGU and VGSSTF detectives attempted a traffic stop but the Defendant fled at a high rate of speed. Following a chase through residential neighborhoods, detectives successfully deployed spike strips to stop the Defendant's speeding car. The Defendant's car came to a stop in the front lawn of a house. Despite repeated commands, the Defendant refused to unlock his car or open the door. At the same time, detectives saw a gun in his hand and noticed that he was reaching toward the backseat. Fearing for their safety, the detectives broke the driver's side window and arrested the Defendant.

A search incident to arrest revealed that the Defendant had on him a black Beretta, PX4 storm, .40 caliber (serial number PY120779) with fifteen rounds in the magazine, a pill bottle containing white circular tablets of suspected narcotics, and a digital measuring scale. A search of the Defendant's car revealed another gun, a Jimenez Arms semi-auto .22 caliber pistol, JA 22 (serial number 1279380), along with numerous baggies of various suspected narcotics.

The suspected controlled substances were submitted to and analyzed by an expert criminalist with the St. Louis County Police Department Crime Laboratory. The suspected controlled substances were confirmed to be marijuana, a Schedule I drug, fentanyl, a Schedule II drug, heroin, a Schedule I drug, and cocaine base, a Schedule II drug. Some of the suspected narcotics that were tested failed to disclose a controlled substance, including 4.965 grams of a clear plastic bag containing off-white powder. The lab determined that thirty-two capsules of fentanyl weighed approximately .069 grams per capsule, or an approximate total of 2.208 grams. The lab further determined that an additional ten capsules of fentanyl mixed with heroin weighed .060 grams per pill, or an approximate total of .600 grams. The lab also determined that the Defendant possessed .893 grams of cocaine base and 96.3 grams of marijuana. The Defendant knew the substances were controlled substances. The Defendant intended to distribute the fentanyl in his possession because he fled from police with a greater-than-user amount of fentanyl packaged for sale and carried weapons for his protection. The Defendant admits knowingly possessing fentanyl with the intent to distribute some or all of it to another individual.

During booking for his March 8 arrest, the Defendant gave police officers one phone number, but then quickly provided another. Believing the first phone number to be the one that the Defendant used to sell drugs, the detectives set up an undercover buy on March 24, 2022. After calling the phone number provided, an undercover detective met the Defendant at the River City Casino parking lot and exchanged $140 for a baggie containing multiple capsules of suspected fentanyl. A search incident to arrest of the Defendant revealed no weapons, a small amount of marijuana, the currency exchanged for the drugs, and the cellphone used to conduct the transaction.

The suspected controlled substances seized on March 24, 2022, were submitted to and analyzed by an expert criminalist with the St. Louis County Police Department Crime Laboratory. The suspected controlled substances were confirmed to be fentanyl and marijuana. The lab determined that thirty-one capsules of fentanyl weighed approximately .057 grams per capsule, or an approximate total of 1.767 grams. The lab further determined that the Defendant had approximately .0873 grams of marijuana. The Defendant knew the controlled substance sold to detectives was fentanyl. The Defendant admits to knowingly possessing and distributing fentanyl to another individual.

5.  **STATUTORY PENALTIES**

    A.  **Statutory Penalties**: The Defendant fully understands that the maximum possible penalty provided by law for the crimes to which the Defendant is pleading guilty are:

    (i)  **Count I (Possession with Intent to Distribute Fentanyl)**: Imprisonment of no more than twenty years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall impose a period of supervised release of at least three years.

    (iii)  **Count III (Distribution of Fentanyl)**: Imprisonment of no more than twenty years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall impose a period of supervised release of at least three years.

6.  **U.S. SENTENCING GUIDELINES: 2021 MANUAL**

    The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply:

    A.  **Offense Conduct:**

## COUNTS I & III

**POSSESSION WITH INTENT TO DISTRIBUTE AND DISTRIBUTION OF FENTANYL**

    (i)    **Chapter 2 Offense Conduct:**

        (a)    **Base Offense Level**: The parties agree that the base offense level is fourteen, as found in Section 2D1.1(c)(13). The parties agree that the Defendant is accountable for at least 4 grams but less than 8 grams of fentanyl based on the quantity of fentanyl in his possession, resulting in the agreed Base Offense Level.

        (b)    **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply: two level increase pursuant to §2D1.1(b)(1) because a firearm was possessed.

    (ii)    **Chapter 3 and 4 Adjustments:**

        (a)    **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because the Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and the Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because the Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if the Defendant does not abide by all of the agreements made within this document, the Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that the Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based

upon the information known at the present time and that any actions of the Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with the Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**(b)** **Other Adjustments:** The parties agree that a two-level increase is warranted pursuant to Section 3C1.2 because the Defendant created a substantial risk or death or serious bodily injury to another person in the course of fleeing from law enforcement on March 8, 2022. The parties have no further agreements regarding any adjustments.

**B.** **Estimated Total Offense Level:** Based on these recommendations, the parties estimate that the Total Offense Levels are as follows:

**(i)** **Counts I & III:** The parties estimate that the Total Offense Level for Counts I and III is fifteen, unless the Defendant is a Career Offender. Depending on the underlying offense and the Defendant's criminal history, the Defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds the Defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. The Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the Defendant is or is not a Career Offender.

**C.** **Criminal History:** The determination of the Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the Defendant's criminal history and the applicable

7

category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

    **D.** **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS

    **a. Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which the Defendant is pleading guilty, and whether the Defendant's conduct falls within the scope of the statute(s).

    **(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining the applicable Sentencing Guidelines range, sentences the Defendant within or below that range, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, adopts the agreed Total Offense Level, and sentences the Defendant within or above that range.

**b. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.   OTHER**

**a. Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Civil or Administrative Actions not Barred; Effect on Other Government Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the Defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crimes that the Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code,

Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The Defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The Defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the Defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS

In pleading guilty, the Defendant acknowledges, fully understands and, hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that he has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the Government's case and any defenses.

**10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT**

This document constitutes the entire agreement between the Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

**11. CONSEQUENCES OF POST-PLEA MISCONDUCT**

After pleading guilty and before sentencing, if the Defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA**

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees

to dismiss or not to bring.

| | |
|---|---|
| 01/05/2023<br>Date | /s/ *Nino Przulj*<br>NINO PRZULJ, #68334MO<br>Special Assistant United States Attorney |
| 1/5/23<br>Date | TYRON EDWARDS<br>Defendant |
| 1/5/23<br>Date | MELISSA K. GOYMERAC, #83550VA<br>Attorney for Defendant |

13